## 14373

GATLIN v. FARMERS MUTUAL INS. ASS'N OF DARLINGTON COUNTY

(188 S. E., 253)

Before OXNER, J., Lee, December, 1935.

*Messrs. George H. Edwards* and *Jas. R. Coggeshall,* for appellant, 

*Mr. Henry C. Jennings,* for respondent, 

November 9, 1936.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

The undisputed facts out of which this action arose, briefly stated, are these: In June, 1928, the defendant association issued a policy of insurance covering a building owned by one Henry Gatlin, whereby it agreed to indemnify him against loss from fire in the sum of $600.00. In May, 1931, while the policy was in force and effect, the house was burned. At the time, the Federal Land Bank of Columbia held a first mortgage on the premises, the building and the land on which it stood, and the Bank of Hartsville held a second mortgage, both for amounts in excess of the insurance, and both of which contained the usual agreement to insure for the benefit of the mortgagees.

For the purpose of meeting its obligation, on October 17, 1931, the defendant drew on the Peoples State Bank of South Carolina, Darlington branch, a check for $600.00, which was made payable to the joint order of Henry Gatlin, the insured, and the two mortgagees above named. There was no proof that this check was ever delivered to the payees, or either of them, at the time it was issued, or thereafter; and upon the request of one of them, the Bank of Hartsville, a duplicate check was sent to it by the association on December 15, 1931, receipt of same being acknowledged by the bank's attorney on the following day. This check, how-

ever, was not presented for payment before the closing of the drawee bank, which did not open its doors for business after December 31, 1931.

This action was brought by Gatlin on March 10, 1933, to collect the $600.00. The only issue made by the pleadings was the defense of payment set up in the answer. On trial of the case, the defendant moved for a directed verdict, on the ground that the issue and delivery of the check to the payees on December 16th constituted payment of the loss, and that the failure of the payees to present the check on or before the closing of the bank constituted negligence on their part which relieved the defendant from liability of further payment. The trial Judge refused the motion, and the jury found for the plaintiff $600.00 with interest. The defendant excepts and brings error.

After the appeal was perfected, the plaintiff died. Later, by order of the Court, John B. Gatlin, as administrator of the estate of Henry Gatlin, deceased, was substituted as respondent in the case.

Section 6937 of the Code provides that "a check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay." See, also, Section 6944. It is generally held that what constitutes a reasonable time depends upon the facts and circumstances of the particular case. See 91 A. L. R., 1181, and the cases there cited, for a discussion of the several phases of this question. It has been said that the length of time that reasonably may be allowed or required must be determined with regard to the attending circumstances—the mode and the place of receiving the check, the relation of the parties, the number of payees and where they reside, and where the drawee bank is located in relation to the payee, etc.

In *Viles v. S. D. Warren Company*, 132 Me., 277, 170 A., 501, 502, the Court said: "The general rule governing the question of reasonable time for presentation of checks for payment is well established. If the bank on which the

check is drawn and the payee are in the same place, the check should be presented during banking hours of the .first secular day following its receipt; if in different places, it should · be deposited in the mail in like time. Special circumstances may excuse delay in either case, but in their absence the rule is absolute."

In the case at bar, Judge Oxner charged the jury as follows: "Now, what is a reasonable time, is a question for the jury under all the facts and circumstances of the case. The jury would take into consideration the distance and the facility of communication between the payee of the check and the bank upon which it was drawn. The distance and facility of communication as between the payees themselves. The jury should take into consideration the number of payees on said check. The jury would take into consideration the nature and circumstances of the check and as to whether or not there was any disagreement between the payees as to the manner in which the proceeds of said check should be divided. The jury would take into consideration all those facts and circumstances, and any other facts and circumstances that exist in the case, and determine whether or not the check was presented within a reasonable time."

The appellant does not complain about the trial Court's statement of the law applicable to the case, but its contention is that it was entitled, as a matter of law, under the facts disclosed by the evidence, to a directed verdict. A careful reading of the record, however, convinces us that the motion was properly refused. We have already indicated the presence of certain special circumstances; others may be stated: The Bank of Hartsville is 15 miles from Darlington, Gatlin lived in the country in Lee County, about 25 miles from the drawee bank, and the Federal Land Bank is located in Columbia, about 60 miles from Darlington. There was a conflict of evidence as to whether or not Gatlin agreed that the check should be made jointly to the order of the three payees. He testified that he was present at the time it was drawn

by the secretary of the defendant association, but denied that it was made out according to his instructions. There was also a conflict in the testimony as to whether or not it was agreed that the check should be delivered to the Bank of Hartsville, one of the claimants of the fund, Gatlin stating that he did not direct this to be done. There is some conflict, too, in the evidence as to how the check was handled after the Bank of Hartsville received it. It appears that the officers of the defendant had notice of the possible conflicting claims of the mortgagees. Mr. Lawson, its president, testified that Mr. Todd, representing the Federal Land Bank, called at his office and made claim to the insurance money; and that he was advised by Mr. Wilmeth, representing the Bank of Hartsville, that that bank was claiming this particular fund.

With these facts before it, the defendant issued the check as it did—Mr. Lawson testifying that he thought it was necessary to do so in order to protect the association—and sent it to one of the payees claiming the fund to be handled by it. There was some attempted adjustment between the mortgagees, but it seems that they were unable to settle the matter before the drawee bank closed its doors for business on December 31st. Gatlin testified that he did not ask that the money be paid to him personally, but that he wanted it properly applied to the mortgage debt owing by him; and that, therefore, he declined to indorse the check when requested to do so by the Bank of Hartsville some time between December 15th and the holidays, pending the settlement of the dispute between the two banks as to the disposition of the fund. He indicated, however, that he was ready to indorse the moment the banks reached an agreement. The Court is satisfied, under the circumstances detailed, that Judge Oxner properly submitted the question to the jury.

The judgment of the Circuit Court is affirmed.

Mr. Justices Bonham, Baker and Fishburne and Mr. Acting Associate Justice A. L. Gaston concur.